**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00989-SBP

WILL GOODWIN,

Plaintiff,

v.

JOHNSON CONTROLS, INC.,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Defendant Johnson Controls Inc. ("JCI"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss Plaintiff Will Goodwin's ("Plaintiff") complaint ("Complaint") for failure to state a claim upon which relief can be granted ("Motion"). Attached hereto as Exhibit A is the Complaint. In support of its motion, JCI states as follows:

**CERTIFICATE OF CONFERRAL**

Pursuant to the Uniform Civil Practice Standards for Magistrate Judges, ¶ 9, on April 19, 2024, undersigned counsel for JCI attempted to contact counsel for Plaintiff via telephone to determine Plaintiff's position regarding the instant motion but was unable to do so. The undersigned counsel for JCI also attempted to contact counsel for Plaintiff via electronic mail. At the time of this filing, the undersigned counsel has not received a response.

## I. INTRODUCTION

Plaintiff alleges four causes of action sounding in failure to pay wages under the Colorado Wage Act, C.R.S. §8-4-101, et seq. ("CWA"), and Breach of Contract, Unjust Enrichment, and Breach of the Implied Duty of Good Faith and Fair Dealing under Colorado common law. Specifically, Plaintiff alleges that JCI failed to pay to him commissions based on written agreements between JCI and him.

Contrary to Plaintiff's allegations otherwise, there are no unpaid commissions due to him. Under the clear terms of the documented incentive plans Plaintiff identifies in the Complaint and bases his claims, Plaintiff receives an advanced incentive payment after securing a job contract with a customer. Plaintiff is entitled to commissions only after, inter alia, the job is completed and JCI receives payment from the customer for the job. Until the job is complete and JCI is paid for the job, Plaintiff is not entitled to commissions. As Plaintiff's pleading admissions concede, the final two prerequisites for commission payment never occurred. Further, the historical incentive plans under which Plaintiff is suing plainly and expressly informed Plaintiff year after year that JCI could unilaterally modify or cancel the incentive plans at any time. JCI exercised that right prior the prerequisites being met, and, as a result, Plaintiff is not entitled to payment of those commissions.

Accepting Plaintiff's allegations as true and considering only the Complaint and documents incorporated by reference therein, Plaintiff fails to state a claim upon which relief can be granted for the following reasons:

A. Plaintiff's CWA claim (First Cause of Action) fails as a matter of law because Plaintiff failed to and cannot allege that the commissions were vested and determinable, e.g.,

that the jobs were completed and JCI received payment for the jobs, and thus do not constitute "wages" under Colorado law;

B. Plaintiff's Breach Of Contract claim (Second Cause of Action) fails as a matter of law because JCI fully performed under and acted in accordance with the incentive plans;

C. Plaintiff's quasi-contract claim of Unjust Enrichment (Third Cause of Action) fails as a matter of law because, as Plaintiff alleges in the breach of contract claim, and JCI concedes for purposes of this Rule 12(b)(6) motion, the parties had a contract; and,

D. Plaintiff's claim of Breach of the Implied Duty of Good Faith and Fair Dealing (Fourth Cause of Action) fails as a matter of law because JCI's alleged actions were contemplated by the terms of the historical (and now superseded) plans he seeks to enforce.

## II. STATEMENT OF FACTS

### A. Pre-2024 Incentive Plans

Plaintiff's claims in this matter arise out of JCI's Incentive Plan for fiscal years 2022 ("2022 Plan") and 2023 ("2023 Plan") (collectively referred to as "Pre-2024 Plans") encompassing the sale of HVAC systems during those years which, by their terms, were in effect from October 1, 2021 through September 30, 2022, and October 1, 2022 through September 30, 2023, respectively. (Annexed hereto as Exhibit A is the Declaration of Aubrey Kallenberger ("Kallenberger Decl.", Exhs. A, B). Regarding the duration, the cover pages to the Pre-2024 Plans identify the effective dates and expressly defined the plan years. (See Kallenberger Decl., Exhs.

A, B).[1] In addition, the Pre-2024 Plans expressly reserved to JCI "the right to change this incentive plan for this Plan Year and any subsequent Plan Year," and made clear that the "[m]anagement has the right to amend, modify, or terminate the plan at the company's discretion with or without notice to the participants, and without consultation." (See Kallenberger Decl., Exh. A, p. 33; Exh. B, p. 37). Thus, Plaintiff was on clear notice that the Pre-2024 Plans applied only to the plan years ending on September 30, 2022, and September 30, 2023, respectively, and that JCI could amend its incentive plans at any time, and/or implement an entirely different commission structure in its future incentive plans.

Regarding the payment of commissions, the 2022 Plan applicable to Plaintiff provided for the following:

- Executed Margin [component] . . . Non-CT Projects: 30% paid up front at month end, one month following month of booking; CT Projects: 65% paid when cash is collected on the contract. Payments continue to be made as cash is collected from 30% to 65%. Remaining paid at time of transfer (100% cash collected).

- Service Commission . . . Credited 75% within 45 days following the month in which the contract is booked. Remaining 25% within 45 days following the month in which the contract transfers and renews. If not renewed, the remaining 25% is not considered earned.

---

[1] JCI's incentive plans cited to and described in the Complaint are attached to this Motion and quoted herein. Mbaku v. Bank of Am., Nat'l Ass'n, Civil Action No. 12-cv-00190-PAB-KLM, 2014 U.S. Dist. LEXIS 115813, at *3 n.2 (D. Colo. Aug. 20, 2014) ("On a Rule 12(b)(6) motion to dismiss, a court may consider a document attached to a pleading or incorporated by reference.")(citing Fed. R. Civ. P. 10(c)); Davis v. BAE Sys. Tech. Sols. & Servs., 764 F. App'x 741, 742 n.1 (10th Cir. 2019)(On a Rule 12(b)(6) dismissal motion, the court may "draw the facts from the allegations in the operative pleading. . . ; from exhibits submitted with it or incorporated by reference; and from 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity'")(citing Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)).

(See Kallenberger Decl., Exh. A, pp. 8, 12).

The 2022 Plan also made clear that these commission payments remained ***un***earned until these contracts transferred to warranty and were fully reconciled:

> Please note that the Company is paying incentive, in some instances, prior to when the incentive is actually earned. Incentive on a contract is not actually earned until transfer and reconciliation. The Company reserves the right to deduct overpayments from future incentive payments. This reimbursement is referred to as a "chargeback." Chargebacks on a contract will not exceed total amount of incentive paid on that contract.
>
> All incentives and kickers described in this plan will be reconciled and treated as earned within 45 days following the month that the contract transfers and is 100% collected. Additional incentive due or any overpayment will be paid or collected with the next pay cycle. Further payments or chargebacks may be made in future months based on any subsequent charges, credits or similar items. Negative adjustments to a salesperson's incentive will not exceed total commission paid on the contract.

(See Kallenberger Decl., Exh. A, "Incentive Reconciliation, Overpayments and Advances", p. 24).

Regarding the payment of commissions, the 2023 Plan applicable to Plaintiff provided for the following:

- Install and L&M (Labor & Material): 30% paid up front at month end, one month following the month of booking; 30%-65% as payments are made and cash is collected; and the remaining balance at time of transfer with 100% of the cash collected.
- PSA (Planned Service Agreements)/ OPS (Operations)/ M&V (Measurement & Verification): A credit of 75% of the commission within 45 days following the month in which the contract is booked; the remaining 25% when the contract transfers and renews. The 25% balance is not considered earned if the contract is not renewed.

(See Kallenberger Decl., Exh. B, pp. 9, 14).

The 2023 Plan also made clear that these commission payments remained ***un***earned until these contracts transferred to warranty and were fully reconciled:

> Please note that the Company is paying incentive, in some instances, prior to when the incentive is actually earned. Incentive on a contract is not actually earned until transfer and reconciliation. The Company reserves the right to deduct overpayments from future incentive payments. This reimbursement is referred to as a "chargeback." Chargebacks on a contract will not exceed total amount of incentive paid on that contract.
>
> All incentives and kickers described will be reconciled and treated as earned within 45 days following the month that the contract transfers and is 100% collected.

(See Kallenberger Decl., Exh. B, "Incentive Reconciliation, Overpayments and Advances", p. 28).

Thus, under the express terms of the Pre-2024 Plans, all commissions remained ***un***earned until the contract transferred to warranty and reconciliation process is completed with 100% of the payment collected. Stated differently, no commission could be "earned" while the sale remained incomplete under the Pre-2024 Plans.[2] For this reason, Plaintiff's repeated assertion that JCI failed to pay him commissions for jobs that were contracted for is belied by the express material terms of the Pre-2024 Plans on which he relies.

Instead, the commissions associated with jobs that were contracted for that Plaintiff seeks in this litigation are ***un***earned incentives under the Pre-2024 Plans that were not due for payment when the plan year governed by the Pre-2024 Plans that ended on September 30, 2022, and September 30, 2023, respectively, and the Pre-2024 Plans were no longer in effect. As such, the unequivocal terms of the Pre-2024 Plans make clear that the commission payments at issue in this litigation are, by definition, ***un***earned under the FY 2023 Incentive Plan.

---

[2] For "PSA/OPS/M&V Commission," the initial term is "complete" only after the contract renewal process is completed. (See Kallenberger Decl., Ex. A, "Calculating Core Commission: Pay Timing", p. 12; Exh. B. "Calculating Core Commission: Pay Timing", p. 14).

**B. New Commission Structure Under the FY 2024 Incentive Plan.**

Consistent with the rights JCI reserved in the Pre-2024 Plans to "change [its] incentive plan for… any subsequent Plan Year," and to "amend, modify, or terminate" the incentive plans at its discretion, JCI implemented a new incentive plan for fiscal year 2024 with the effective date of October 1, 2023 ("2024 Plan") that modified and redesigned the commission payment framework for Plaintiff and others employees selling commission-eligible products for JCI. (See Kallenberger Decl., Exh. C). Under the 2024 Plan, 100% of the commission is paid at the time of booking for all sales made on or after October 1, 2023, regardless of when JCI collects the full payment and the contract is transferred. (Id.). Significant to this case, the 2024 Plan does not contain any language that would entitle Plaintiff to the payment of any unearned incentive that might (or might not) have turned into an "earned" incentive under the Pre-2024 Plans after they expired. In other words, any incentive that was ***un***earned at the expiration of the Pre-20024 Plans (including all of the amounts listed in the Complaint) would remain ***un***earned and not contractually payable under the 2024 Incentive Plan because (i) JCI exercised its clear and unambiguous right to change its incentive plan, including terminating payments that might (or might not) become due under prior plans, and (ii) the pre-2024 Plans, by their clear terms, were no longer in effect.

Plaintiff commenced this action after being informed that JCI's new commission structure under the 2024 Plan does not encompass payment of any commission associated with the sales made under the Pre-2024 Plans that were unearned on September 30, 2022, and September 30, 2023, when the Pre-2024 Plans, by their terms, expired. (See Kallenberger Decl., Exhs. A-C). A plain reading of the Pre-2024 Plans and 2024 Plan clearly demonstrates that Plaintiff is not legally entitled to these unearned commissions under the Pre-2024 Plans because they did not become due

for payment before the pre-2024 Plans expired, JCI exercised its contractually reserved right to change and redesign the commission structure and implemented a new structure that does not provide for the payment of any unearned commissions under the Pre-2024 Plans, and nothing in the 2024 Incentive Plan provides for a payment of any unearned commission under the Pre-2024 Plans that are no longer in effect. Accordingly, Plaintiff's Complaint should be dismissed for a failure to state a claim.

## III. LAW AND ARGUMENT

### A. Standard of Review

The purpose of a motion to dismiss is to facilitate the just, speedy, and inexpensive resolution of disputes by weeding out legally deficient claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007). The federal rules require a plaintiff, upon initiating an action, to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that does not "state a claim to relief that is plausible on its face" fails to satisfy that standard. Twombly, 550 U.S. at 570. Although the court "must accept as true all of the allegations contained in a complaint," that "tenet . . . is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

In assessing the viability of the pleading, the Court is not constrained by the Complaint's conclusory characterizations of the plans incorporated by reference in the Complaint. Those documents speak for themselves. As a matter of law, documents that a defendant attaches to a

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Brokers' Choice of Am., Inc. v. NBS Universal, Inc., 861 F.3d 1081, 1104 (10th Cir. 2017) ("A district court may . . . consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (internal quotation marks omitted) (citing Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002))); GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy . . . to be considered on a motion to dismiss"). Because Plaintiff refers to the Pre-2024 Plans and 2024 Plan in the Complaint, and seeks to enforce the terms of those plans, JCI has filed copies of the applicable plans with this motion. (See Exh. A, Complaint, ¶¶ 6, 9, 11, 12, 14, 17, 18, 19, 24, 33, 35, 36, 37, 41, 48, 49, 51; Exh. B, Kallenberger Decl., Exhs. A-C). The Court can consider documents without converting a FRCP 12(b)(6) motion into one for summary judgment. GFF Corp., 130 F.3d at 1384-85 ("When a complaint refers to a document and the document is central to the plaintiff's claim," a court may consider it without converting a motion to dismiss to a motion for summary judgment). Indeed, the plans are the documents that Plaintiff contends are the contracts on which the entire case teeters. Those plans must be reviewed by the Court to determine if Plaintiff states a plausible breach of contract claim and other claims that also require the legal interpretation of the contract.

### B. Plaintiff's CWA Claim Fails As A Matter Of Law Because The Advance Incentive Payments Were Not Wages

Plaintiff's CWA claim (First Cause of Action) fails as a matter of law because he was never entitled to the commissions he seeks. As a matter of law, commissions are due when they are

"earned, vested, and determinable" pursuant to the terms of any such agreement. Colo. Rev. Stat. § 8-4-109(3)(b); Gomez v. Children's Hosp. Colorado, No. 18-CV-00002-MEH, 2018 U.S. Dist. LEXIS 111900, 2018 WL 3303306, at *6 (D. Colo. July 8, 2018) ("Colorado courts have specifically held that employment agreements define when benefits are earned, vested, and determinable"). For Plaintiff to show the commissions were earned, vested, and determinable, he must have alleged that he had an "enforceable right to receive such benefits pursuant to an employment agreement." Johnson v. Greenfield Holdings, LLC, No. 22-CV-01909-REB-NRN, 2023 WL 3437372, at *3 (D. Colo. May 12, 2023) (citing Echon v. Sackett, 2019 WL 8275344, at *6 n.6 (D. Colo. Feb. 12, 2019), aff'd, 809 Fed. Appx. 468 (10th Cir. 2020)). "Nothing in [the CWA] shall ... require the payment . . . of compensation not yet fully earned under the compensation agreement between the employee and employer, whether written or oral." Colo. Rev. Stat. § 8-4-109(2).

Plaintiff does not have an enforceable right to the commissions. The plain language of the Pre-2024 Plans proves that JCI's HVAC Account Executives (like Plaintiff) are merely *credited* and *advanced* payment until such time as jobs are completed and JCI receives payment. (Exh. B, Kallenberger Decl., ¶¶ 7, 8). In this lawsuit, Plaintiff seeks to recover *future* as-of-yet *unvested* and *undetermined* commission payments. That is antithetical to the very nature of the CWA. Because Plaintiff has not alleged and cannot prove that the commissions were fully vested and determinable, the CWA claim necessarily fails as a result and should be dismissed with prejudice now. Lawson v. Heartland Payment Sys., 548 F. Supp. 3d 1085, 1093 (D. Colo. 2020) (dismissing CWA claim where advance payment was not determinable); Gomez v. Children's Hosp. Colo., Civil Action No. 18-cv-00002-MEH, 2018 U.S. Dist. LEXIS 111900, at *17 (D. Colo. July 5,

2018) (dismissing CWA claim because employee failed to meet prerequisites to vest in benefits payments); Lawson v. Heartland Payment Sys., 548 F. Supp. 3d 1085, 1094 (D. Colo. 2020) (determining that plaintiff failed to meet perquisites for payment and "plaintiff's residual commission was not vested, earned, or determinable").

Even if the terms of prior, now defunct Pre-2024 Plans still applied, the CWA claim must be dismissed because JCI terminated the Pre-2024 Plans before the jobs were complete and fully paid, which would have been the only point at which Plaintiff would have been entitled to the commission. As noted above, Plaintiff is not entitled to the commissions under the terms of the present fiscal year's incentive plans, and JCI had every right to make the plan changes about which Plaintiff complains. JCI advised Plaintiff in the incentive plans, year after year, that JCI had "the right to amend, modify, or terminate the plan at the company's discretion with or without notice to eligible participants." (Exh. B, Kallenberger Decl., ¶¶ 7, 8). JCI exercised this right year after year to amend and promulgate new incentive plans.

### B. Plaintiff's Breach Of Contract Claim Fails Because JCI Fully Performed in Accordance with The Plans

Plaintiff's failure to allege any facts to show that JCI failed to fully perform under the Pre-2024 Plans is dispositive of his breach of contract claim. To state a claim for breach of contract under Colorado law, Plaintiff must plausibly allege, inter alia, the existence of a contract and JCI's failure to perform under the contract. See Cassidy v. Millers Cas. Ins. Co. of Texas, 1 F. Supp. 2d 1200, 1212 (D. Colo. 1998) (citing Western Distributing Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992)). For the purposes of this Motion only, JCI concedes that there was a contract.

Here, the Pre-2024 Plans specifically state that commissions are not payable until the job contract is secured with the customer, the job is completed, and JCI is paid for the job. Plaintiff's

pleading admissions confirm that the last two conditions were not met. See Exh. A, Complaint, at ¶8 ("Over the life of the project, [JCI] would then pay the remaining amount of Mr. Goodwin's commission . . . as the operations team completed the project, and the client paid Johnson Controls for services rendered"). Pursuant to the Pre-2024 plans, until those last two prerequisites were met, JCI had no obligation to pay the commissions. (Exh. B, Kallenberger Decl., ¶¶ 7, 8).

Furthermore, the Pre-2024 Plans make expressly clear that JCI can "amend, modify, or terminate the plan at the company's discretion with or without notice to eligible participants." (See Exh. B, Kallenberger Decl., ¶¶ 7, 8). Reading all of these components together, JCI's promulgating of a new FY2024 incentive plan (as they have done year after year) in which the way commissions are credited and pay is streamlined is not a breach of contract. JCI was entitled to do exactly that. Because Plaintiff failed to adequately state a claim for breach of contract, the breach of contract claim (Second Cause of Action) should be dismissed with prejudice. McCollam v. Sunflower Bank, N.A., 598 F. Supp. 3d 1104, 1113 (D. Colo. 2022) (dismissing breach of contract claim because "the Contract Documents are unambiguous . . . and expressly permit [defendant]'s course of conduct challenged by Plaintiffs").

### C. Because There Is a Valid Contract, Plaintiff Has Failed To Adequately Plead His Unjust Enrichment Claim.

Plaintiff's unjust enrichment claim should be dismissed because the breach of contract claim covers the exact same subject matter as the unjust enrichment claim. As a matter of law, a party cannot recover for unjust enrichment where there is a contract addressing the subject of the alleged obligation to pay. See Dudding v. Norton Frickey & Assocs., 11 P.3d 441, 445 (Colo. 2000); Interbank Invs., LLC v. Eagle River Water & Sanitation Dist., 77 P.3d 814, 816 (Colo. App. 2003) ("[A] party cannot recover for unjust enrichment by asserting a quasi-contract when

an express contract covers the same subject matter because the express contract precludes any implied-in-law contract").

Here, Plaintiff relies on the Pre-2024 Plans and 2024 Plan as the basis for the breach of contract claim. Specifically, he cites to the plans and/or JCI's alleged breach of the plans in the Complaint. (See Exh. A, Complaint, at ¶¶ 33, 35, 36, 37). There is no doubt that Plaintiff's unjust enrichment claim covers the same subject matter as the breach of contract claim and is subsumed within the breach of contract claim. See e.g., Dudding, 11 P.3d at 445. Because Plaintiff's unjust enrichment claim covers the same subject matter as the breach of contract claim, the Court should therefore dismiss Plaintiff's unjust enrichment claim with prejudice. TVPX ARS, Inc. v. Bombardier, Inc., No. 1:17-cv-107-RJS-PMW, 2019 U.S. Dist. LEXIS 170442, at *21 (D. Utah Sep. 30, 2019) ("It is well settled, however, that '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter'")(citing O'Grady v. BlueCrest Capital Mgmt. LLP, 111 F. Supp. 3d 494, 504 (S.D.N.Y. 2015), aff'd, 646 F. App'x 2 (2d Cir. 2016)).

**D. Plaintiff's Breach Of The Implied Duty Of Good Faith And Fair Dealing Claim Fails As A Matter Of Law Because JCI Acted In Accordance With The Plans**

Plaintiff's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing fails because JCI acted according to the terms in the Pre-2024 Plans and because JCI did not exercise any discretionary power unfairly that it may have had under those plans. The implied covenant of good faith and fair dealing "may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995) (emphasis added). The covenant of good faith and fair dealing

"applies when one party has discretionary authority to determine terms of the contract, such as quantity, price, or time." Id.; Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc., 872 P.2d 1359, 1363 (Colo. App. 1994). "Discretion occurs when the parties, at formation, defer a decision regarding performance terms of the contract." Amoco Oil Co., 908 P.2d at 498.

Here, Plaintiff alleges that JCI withheld commission payments, but concedes that this alleged act does not implicate any discretion, and thus, Plaintiff's claim fails. Plaintiff alleges that "[b]y withholding . . . earned wages, [JCI] has acted in bad faith, and in violation of the implied covenant of good faith and fair dealing that is binding on both parties to the contract. (See Exh. A, Complaint, ¶ 50). Plaintiff's allegation is squarely at odds with his prior allegation that JCI would "pay the remaining amount of [Plaintiff's] commission . . . as the operations team completed the project, and the client paid Johnson Controls for services rendered." (See Exh. A, Complaint, ¶ 8). It is further contradicted by the Pre-2024 Plans' language that commissions are paid when the job is completed and JCI is paid. (Exh. B, Kallenberger Decl., ¶¶ 7, 8). Based on Plaintiff's own pleading admissions and the Pre-2024 Plans language, the parties intended that Plaintiff would be paid commissions when, inter alia, a job is complete and JCI is paid. Because Plaintiff failed to and cannot allege facts showing JCI used discretion in determining when commissions are paid, his breach of the duty of good faith and fair dealing claim should be dismissed with prejudice.

Further, as described above, JCI acted in accordance with the plain and unambiguous language of the plans. Because Plaintiff did not meet the perquisites for commission payment, JCI did not pay the commissions. Based on the Pre-2024 Plans' clear and conspicuous language, JCI exercised its right to amend the plan language and alter the commission structure. Because JCI acted in accordance with the rights expressly granted to it in the Pre-2024 Plans, a claim for breach

of implied duty of good faith and fair dealing cannot lie and should be dismissed with prejudice at this preliminary juncture. Armata v. Certain Underwriters at Lloyd's London — Syndicate 1861, Civil Action No. 21-cv-00160-NYW, 2022 U.S. Dist. LEXIS 142830, at *22 (D. Colo. Aug. 10, 2022)("A party which acts in accordance with rights expressly provided in a contract cannot be held liable for breaching an implied covenant of good faith'")(citing In re Minpeco, USA, Inc., 237 B.R. 12, 26 (Bankr. S.D.N.Y. 1997)).

## IV. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted and for such further relief that the Court deems just and proper.

Respectfully submitted this 19th day of April, 2024.

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

*s/ William F. Cusack III*
William F. Cusack III
2000 South Colorado Boulevard
Tower Three, Suite 900
Denver, CO 80222
Telephone: 303.764.6800
Facsimile: 303.831.9246
william.cusack@ogletree.com

*Attorneys for Defendant Johnson Controls Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2024, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed with the Clerk of Court using the CM/ECF system which shall electronically serve a true and accurate copy of the same upon counsel for Plaintiff as follows:

Sara A. Green
Hardin Thompson PC
2301 Blake Street, Suite 100
Denver, Colorado 80205
(813) 940-8118
sgreen@hardinlawpc.net

*s/ Alison Shaw*
Alison Shaw, Paralegal