**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-CV-00989-SBP

WILL GOODWIN

Plaintiff,

v.

JOHNSON CONTROLS, INC.

Defendant.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

---

COMES NOW, Plaintiff Will Goodwin, by and through his counsel Hardin Thompson, P.C., hereby responds in opposition to Defendant's Motion to Dismiss. In support thereof, Plaintiff states as follows:

The Complaint went beyond merely "labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, Rather, as discussed herein, the Complaint substantiated those claims with specifically plead facts that, if true and with all inferences drawn in Mr. Goodwin's favor, are sufficient to survive the "disfavored" F.R.C.P. 12(b)(5) motion to dismiss. *Id*.

Defendant provided the Court with redacted Incentive Plans. Defendant kept only small portions of the plans, what it allegedly considers helpful to its Motion. Mr. Goodwin submits that the entirety of each plan should be submitted.

## I. BACKGROUND

From Mr. Goodwin's first day of employment in June 27, 2016, until September 2023, he was paid through a long-standing incentive plan with Defendant, which provided for the payment of commissions. Until September 30, 2023, this Incentive Plan called for the payment of commission on jobs sold by Plaintiff in installments, that of 10.11% of the profit margin on each sale in commission to be paid at the 'booking' of the job into the Defendant's system, and the remaining balance of the commission due when the final payment on the installation of the product sold is paid by the customer, and the job transfers to warranty. [Compl. ¶¶ 7-8]. The second installment payment referred to as a 'backlog' was paid to the Mr. Goodwin when installation was complete. *Id*. This long-standing process ceased in November 2023, when Defendant announced that retroactively, as of October 1, 2023, it would not pay any of its account executives or sale people, including Plaintiff, their second installment commission payment for work already sold and in progress before September 30, 2023. [Compl. ¶¶ 13-14]. For Mr. Goodwin, this meant that Defendant took back more than $156,673.12, in outstanding commission on jobs he sold that were in the process of installation. Defendant continues to collect payment on each of Mr. Goodwin's jobs. The payment of commissions to Mr. Goodwin is governed by a written incentive plan. Mr. Goodwin received written incentive plans during each year of his employment with Defendant.

Defendant claims it has the right to retroactively change the incentive plan to no longer be obligated to pay Mr. Goodwin his due commission. This is contrary to the Colorado Wage Act C.R.C.P. § 8-4-101, *et. seq*. Mr. Goodwin is owed commission, which Defendant has intentionally refused to pay him, on millions of dollars of sales of its equipment. Many of Mr. Goodwin's sales involve large projects that take one year or more to complete. Because of this, the 2023 Plan (as with numerous plans before it) provides that commissions for booked projects are paid out in full

when the project is complete and goes to warranty, even if those payments are paid in subsequent fiscal years.

During the 2023 Plan Year, and years prior, Defendant provided Plaintiff with a 'dashboard' and monthly spreadsheets that tracked commissions for ongoing projects that are not completed during the plan year. These commissions, due to the Plaintiff at project completion, were listed by Defendant as a backlog of work to be installed and are paid one month after the completed job goes to warranty, no matter what year the final installment occurs in. [Compl. ¶ 7-8]). By way of example, under the 2023 Plan (and all of Plaintiff's previous Incentive Plans), if Plaintiff booked a job on July 1, 2023, he was paid approximately 25% of his total commission within 30 days of the issuance of a contract number for the booking (the "booked job"). If the booked job did not complete until July 1, 2024, Plaintiff would be entitled to the payment of the approximate remaining 70% of his commission within 30 days of July 1, 2024. According to the 2023 Plan, Plaintiff need only be employed at the time of project completion to receive his due and owing commission. Employment is the only prerequisite.

At the conclusion of the 2023 Plan Year (the end of Defendant's fiscal year), Plaintiff carried over approximately $156,673.12 in commissions due for projects which were still being installed. [Compl. ¶16]. These are projects which Defendant was continuing to work, billing their customer and accepting payment per the contract, which were procured and secured by Mr. Goodwin for Defendant's benefit.

Whether the project completed in 2024, 2025 or beyond, according to the 2023 Plan and all prior plans in the fiscal years in which this work was booked, Plaintiff need only be employed at the time of project completion to receive his final payment of commission. Plaintiff is currently employed.

In November 2023, after the close of the 2023 fiscal year on September 30, 2023, Defendant introduced its 2024 Incentive Plan "the 2024 Plan". See Defendant's Mot. To Dismiss. The 2024 Plan contains terms for the payment of commissions on jobs sold between October 1, 2023 – September 30, 2024 that is remarkedly different from the 2023 Plan and all previous plans provided to Plaintiff. Under the new 2024 Plan, all commissions are paid at the time of contract booking, and only on the first payment that the customer makes. Not only is the commission structure changed for 2024, Defendant's 2024 incentive agreement is retroactive and effectively wiped out all of Plaintiff' past earned commissions. Defendant will not pay Mr. Goodwin his earned commissions, but it will still collect on those projects. [Compl. ¶ 17]. Therefore, Defendant is keeping Mr. Goodwin's earned remaining 70% commission going forward for all of Plaintiff's 2023 (and prior) sales. *Id*.

## II. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, the

Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal quotation marks and brackets omitted).

Federal courts consistently hold that granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). Such motions are looked upon with disfavor. *BKP, Inc. v. Killmer, Lane & Newman, LLP*, 506 P.3d 84, 80 (Colo. App. 2021). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v Gibson*, 255 US 41, 45-46 (1957). Plaintiff has met his burden. Defendant's Motion to Dismiss must be dismissed in its entirety.

## III. ARGUMENT

### a. The Colorado Wage Claim Act

"Wages" or "compensation" is defined by the Colorado Wage Claim Act in C.R.S. § 8-4-101(8). It includes: "Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." *Id.* An employer must pay commissions and bonuses "earned for labor or services performed in accordance with the terms of any agreement between an employer and employee. C.R.S. § 8-4-101(14)(a)(II). The purpose of the Colorado Wage Claim Act ("CWCA") "is to ensure that wages are paid in a timely manner and to provide adequate judicial relief in the event wages are not paid[,]" and its provisions are liberally construed to serve that purpose. *Fang v. Showa Entetsu Co.,* 91 P.3d 419, 421 (Colo. App. 2003) (citing *Montemayor v. Jacor Communications, Inc*., 64 P.3d 916, 923 (Colo. App. 2002)). C.R.S. § 8-4-101(14)(a).

The CWCA defines an "employee" as "any person…performing labor or services for the benefit of an employer in which the employer may command when, where, and how much labor or services shall be performed…" *Id*. at C.R.S. § 8-4-101(5). An "employer is "every person, firm, partnership, association, corporation…and any agent or officer thereof, of the above-mentioned classes, employing any person in Colorado." *Id*. at § 8-4-101(6). Plaintiff Goodwin is an employee and Defendant Johnson Controls is an employer.

Under the CWCA, wages are "[a]ll amounts for labor or service performed by employees, whether the amount is fixed or ascertained by…commission basis, or other method….No amount is considered to be wages…until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article." C.R.S. § 8-4-101(14)(a)(I). Wages include commission earned for labor or services performed in accordance with the terms of any agreement between employer and employee. *Id.* at § 8-4-101(14(a)(II). Under the Wage Act, the employee earns the agreed upon commission when the employee does the work, and the

commission is owed in accordance with the terms of the commission agreement. *Id*. The commission is determinable when the amount owed is based upon an agreed upon formula

Under Colorado law, and Colorado Division of Labor and Statistics orders, employers have the same legal obligation to pay sales commissions and bonuses to employees as they do regular wages. C.R.S. § 8-4-101*, et. seq.* See also, *Javernick Holdings Corp., dba Atlas Roofing Company*, DLSS Claim No. 1295-19, Hearing Officer Decis. #20-023 (Apr. 2020). Sales commissions and bonuses must be paid as agreed to by the employer. While employers have discretion to implement or revise a commission plan or bonus agreement, they cannot do so to cause a forfeiture of earned commissions or bonuses, which means employers generally cannot modify a plan or the division of commissions or bonuses to prevent an employee from receiving a sales commission or bonus that has already been earned. *Id*.

**i. Goodwin's Commissions were Earned, Vested and Determinable**

Wages are earned, vested, and determinable when an employee has an enforceable right to receive payment for such benefits pursuant to an employment agreement. See *Fang v. Showa Entetsu, Co.,* 91 P.3d 419, 422 (Colo. App. 2003) ("For purposes of the CWCA, compensation is earned 'if it is vested pursuant to an employment agreement at the time of an employee's termination.'" (quoting *Barnes v. Van Schaack Mortg*., 787 P.2d 207, 209 (Colo. App. 1990))). Defendant's Incentive Plans, redacted at length and attached to its Motion to Dismiss, contains the following sentence, "Please note that the Company is paying incentive, *in some instances*, prior to when the incentive is actually earned. Incentive on a contract is not actually earned until transfer and reconciliation." [Doc. 9, Exs., emphasis added]. The CWCA defines earned commission as "earned if it is vested pursuant to an employment agreement. . ." *Fang* at 419. In addition, the Incentive Plans, nor Defendant, define "in some instances."

Mr. Goodwin has an enforceable right to his earned, vested and determinable commissions under the Incentive Plans. The amount he is to receive is determinable. It is based upon a formula in an Incentive Plan. The commissions are vested and earned. The parties agreed on all material terms for payment of the commissions.

Mr. Goodwin's Incentive Plans, prior to 2024, state that when Mr. Goodwin completes a sale, he expects to receive between 10.11% of the profit margin on that sale as commission (referred to by Defendant an "incentive"). [Compl. ¶ 7]. Under this system, Mr. Goodwin received an initial commission payout of approximately 20-25% of the commission shortly after closing the contract. Over the life of the project, Johnson Controls would then pay the remaining amount of Mr. Goodwin's commission (termed "backlog") as the operations team completed the project, and the client paid Johnson Controls for services rendered. The periodic payments were referred to as "Monthly Incentives." [Compl. ¶ 8]. Over the years, Mr. Goodwin accumulated a backlog of over six figures of commissions that Johnson Controls had agreed to pay him during the course of his projects. If Mr. Goodwin procured, and closed a contract that called for payments to be made over the course of multiple fiscal years, Mr. Goodwin would be paid pursuant to the payment plan in effect at the time the contract was closed. This ensured that Mr. Goodwin earned commission on the work he performed commensurate with his expectations at the time the work was performed. [Compl. ¶ 9].

In November 2023, Defendant announced that it was going to continue to service the contracts and projects that Mr. Goodwin, and all other Account Executives and sales people procured, and accept payment from its customers for the billions of dollars of backlog that are owed, but Defendant was not going to continue pay Mr. Goodwin, or other employees, the commissions that determined his, and their backlog. [Compl. ¶ 10]. Defendant removed the

provision that ensured Mr. Goodwin would be paid his backlog at the completion and payment of those projects. However, Defendant will still be paid for all projects, effectively denying all of its Account Executives, including Mr. Goodwin, his earned, due, and owing commission. [Compl. ¶ 13]. Defendant Johnson Controls committed a forfeiture.

Defendant's reliance on *Lawson v. Heartland Payment Sys.,* 548 F. Supp. 3d 1085, 1093 (D. Colo. 2020) is misplaced. In *Lawson*, the plaintiff's commission was not vested or determinable because there were no signed sales contracts, or use of defendant's services, at the time of plaintiff's termination. *Id.* In *Gomez v. Children's Hosp. Colo.* No. 18-CV-00002-MEH, 2018 U.S. Dist. LEXIS 111900, 2018 WL 3303306, at *6 (D. Colo. July 8, 2018), also cited by Defendant, the plaintiff was seeking to be paid her accrued sick leave. The court found that plaintiff's benefit had not earned or vested as receiving sick leave was contingent on the written requirement that plaintiff work at the hospital for 15 years and accrue 650 hours of sick leave. At the time of her resignation, Gomez did not meet either of the requirements. *Id.* In this case, Mr. Goodwin met all conditions for the payment of his commissions.

**ii. Colorado Disfavors Forfeitures**

Where a commission forfeits earned commissions, it violates C.R.S. § 8-4-109(1)(a) because the wages are "earned and, therefore, became vested and determinable as of the date of termination." *Rohr v. Ted Neiters Motor Co*., 758 P.2d 186, 188 (Colo. App. 1988). This is true even if the commission agreement provides for the payment of the commission sometime after termination had the employee remained employed. *Id.*

Historically, Colorado has disfavored clauses that forfeit commissions. In 1964, the Colorado Supreme Court held that language forfeiting commissions for orders shipped after termination of employment was "unconscionable, arbitrary and unreasonable and results in an

unjust enrichment of the defendant." *Moorman Mfg. Co. v. Rivera*, 395 P.2d 4, 6 (Colo. 1964). But with the CWCA, even a clear and unambiguous clause that forfeits earned commissions is unenforceable because it waives an employee's right to receive payment of earned wages. C.R.S. § 8-4-121. The Colorado Supreme Court's decision in *Nieto v. Clark's Market, Inc*., 488 P.3d 1140, 1146-49 (Colo. 2021) found that the CWCA prohibits forfeiture of earned vacation pay and that any contract term that purports to forfeit earned vacation pay is void. See also C.R.S. § 8-4-121, (agreements waiving or modifying employee's rights in violation of the CWCA are void); See also *Hallmon v. Advance Auto Parts, Inc*., 921 F.Supp.2d 1110, 1120 (D. Colo. 2013) (interpreting agreement to allow forfeiture of earned bonus on termination "would allow employers to manipulate similar contractual language to avoid paying rightful wages to employees by conveniently terminating them shortly before their payday, contravening the public policy behind the CWCA").

An employer generally may not interpret or implement a sales commission or bonus plan in a way that causes a forfeiture of an employee's right to an earned commission. Sales commissions and bonuses must be paid as agreed to by the employer. C.R.S. § 8-4-109(1)(a). While employers have discretion to implement or revise a commission plan or bonus agreement, they cannot do so to cause a forfeiture of earned commissions or bonuses. C.R.S. § 8-4-121. In other words, employers generally cannot modify a plan or the division of commissions or bonuses to prevent an employee from receiving a sales commission or bonus that has already been earned. As a result, an Defendant must pay sales commissions and bonuses to Mr. Goodwin because such amounts are earned, vested and determinable. Mr. Goodwin completed all steps identified as necessary to earn the commission, and the amount owed can be calculated.

**b. Breach of Contract**

Defendant breached its contract with Mr. Goodwin and caused him damage by refusing to pay his earned, vested and determinable commission. This is sufficient to state a breach of contract claim. Defendant appears to concede that the Incentive Plans were contracts. See *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (listing the elements of a breach of contract claim as "(1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff" (internal citations omitted)).

Defendant alleges is can change, revise or modify the Incentive Plan for any reason and at any time, without any input from Mr. Goodwin. The commission Mr. Goodwin is owed is owed on past sales. The only condition is that Mr. Goodwin be employed at the time the final amount of commission is paid. Mr. Goodwin met that condition. At the time of making the sale, Plaintiff knew he would receive payment over time and by performing under the Incentive Plan as presented, Plaintiff agreed to the installment terms. The Defendant is trying to retroactively change those installment terms after receiving Plaintiff's benefit of the bargain. Mr. Goodwin has a breach of contract claim.

**c. Unjust Enrichment**

Defendant appears to concede that the Incentive Plan is a contract between the parties. However, in the same breath, Defendant claims it can alter, change, revise and essentially void the incentive agreement at any time., without any agreement or input from Mr. Goodwin. If the Court determines that no contract exists due to its illusory nature, Mr. Goodwin can pursue his common law claims in the alternative to his breach of contract claim.

Mr. Goodwin rendered services to Defendant which conferred a benefit upon Defendant with the expectation that he would be compensated fairly and in accordance with the Incentive

Plan in effect when he performed the work. [Compl. ¶ 41]. Defendant understood and realized the benefit conferred. [Compl. ¶ 42]. Defendant accepted the services rendered by Mr. Goodwin. [Compl. ¶ 43]. Defendant accepted the benefit, and under such circumstances, it would be inequitable for Defendant to retain the benefit of withholding Plaintiff's earned and owed wages, and commissions, without payment of its value. [Compl. ¶ 44]. Mr. Goodwin's common law claims apply if the Court later determines the incentive plans are found to be illusory and unenforceable.

Defendant takes the position that the "amend and modify" provisions contained in the Incentive Plans give it the unfettered right to change compensation terms at any time, regardless of promises made in the past, and regardless of the consideration made for those promises. [Doc. 9]. Once Mr. Goodwin has made the sale and Defendant is being paid by the customer, it is not in good faith to change how Defendant will pay the Mr. Goodwin for the work he has already completed, or to take it away altogether.

**d. Breach of the Duty of Good Faith and Fair Dealing**

Mr. Goodwin will prove that the Defendant did not act in good faith and fair dealing when it retroactively took earned commissions from Mr. Goodwin. The plain meaning of the Incentive Plans is that Mr. Goodwin is entitled to be paid his earned commissions. The 2024 Incentive Plan terminated all previous Incentive Plans causing all account executives, including Mr. Goodwin, to forfeit his earned commission. Defendant, however, is still collecting on those payments.

Defendant established valid enforceable Incentive Plans, that in exchange for work, Mr. Goodwin would be paid all of his earned wages, including his backlog. [Compl. ¶ 48]. These plans imply good faith and fair dealing between the parties, as well as a duty of cooperation, on the part of both parties to the pre-November 2023, Incentive Plans. [Compl. ¶ 49]. Mr. Goodwin became employed, and continued to work with Defendant because he was paid pursuant to the Incentive

Plans. By withholding approximately $156,673.12 of Mr. Goodwin's earned wages, Johnson Controls has acted in bad faith, and in violation of the implied covenant of good faith and fair dealing that is binding on both parties to the contract. [Compl. ¶ 50]. Mr. Goodwin has, in good faith, performed his obligations under the pre-November 2023, Incentive Plans that he has with Johnson Controls. [Compl. ¶ 51]. Mr. Goodwin will assert that Defendant's bad faith action, to withhold Mr. Goodwin's earned backlogged commission, prevented Mr. Goodwin to obtain the benefit of his bargain with Defendant.

**Conclusion**

Defendant's installment plans state, in clear and unequivocal language, the conditions Mr. Goodwin must meet to be entitled to receive the final commission. Mr. Goodwin met the conditions. Defendant has not provided any evidence to the contrary. The language in the pre-2024 installment plans define when commission is deemed earned. Mr. Goodwin met all requirements of his earned commission. The only condition being that he remain employed at the time the second installment became due.

Mr. Goodwin's Complaint alleges sufficient facts to support a claim for violation of the Colorado Wage Act, Breach of Contract, or in the alternative Unjust Enrichment, and breach of the duty of good faith and fair dealing. Mr. Goodwin has plausibly alleged his commissions were earned, vested, and determinable. Defendant's Motion to Dismiss should be dismissed in its entirety.

Submitted the 10th day of May, 2024.

HARDIN THOMSPON, P.C.

*s/ Sara A. Green*

Sara A. Green
2301 Blake Street, Suite 100
Denver, Colorado 80205

Telephone: 813-940-8118
sgreen@hardinlawpc.net
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of May, 2024, the foregoing document has been served via the Court's electronic filing system to:

William F. Cusack
Ogletree Deakins Nash Smoak & Stewart, PC
2000 S. Colorado Blvd.
Tower 3, Suite 900
Denver, CO 80222
303-764-6800
william.cusack@ogletreedeakins.com

*s/ Victor Zamora*
Victor Zamora