IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 24-cv-00989-RMR-TPO

WILL GOODWIN,

    Plaintiff,

v.

JOHNSON CONTROLS, INC.,

    Defendant.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Timothy P. O'Hara, ECF No. 25, entered on December 27, 2024, addressing Defendant's Motion to Dismiss, ECF No. 9. Magistrate Judge O'Hara recommends that the motion be denied.

Defendant timely filed an objection to the Recommendation, ECF No. 26. Plaintiff filed a response to the objection, ECF No. 27. The Court has received and considered the Recommendation, the Objection, the record, and the pleadings. For the reasons stated below, the Court sustains in part and overrules in part the Defendant's objections and accepts in part and respectfully rejects in part the Magistrate Judge's Recommendation.

**I. LEGAL STANDARD**

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made,

1

and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations.  28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). When no proper objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[1] Fed. R. Civ. P. 72(b) advisory committee's note to 1993 amendment.

---

[1] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review, Fed. R. Civ. P. 72(b).  *See, e.g., Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 249 n.1 (D. Colo. 2014) (Daniel, J.).

## II.  ANALYSIS

Defendant does not object to the factual or procedural background discussed in the Recommendation. Accordingly, the Court adopts and incorporates the factual and procedural background included within the Recommendation as if set forth herein.

Defendant raises several objections to the Recommendation. First, Defendant argues that the Magistrate Judge ignored critical terms and language in the operative Incentive Plans[2] to reach the erroneous conclusion that Plaintiff's commissions were earned, vested, and determinable under the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.* ("CWCA"). Second, Defendant argues the Magistrate Judge erroneously concluded that Defendant failed to perform under the parties' contract. Third, Defendant argues the Magistrate Judge erred in failing to dismiss the unjust enrichment claim because that claim is not available where Plaintiff has plausibly alleged the existence of a contract. Finally, Defendant argues the Magistrate Judge erred in failing to dismiss the breach of implied duty of good faith and fair dealing claim, because he failed to recognize that the implied duty of good faith and fair dealing cannot change the terms of the parties' contract. The Court addresses each argument in turn.

---

[2] As explained by the Magistrate Judge, the complaint references a "November 2023 Incentive Plan" and a "new 2024 Incentive Plan." ECF No. 4, ¶ 18. In its motion to dismiss, Defendant attached redacted versions of the Incentive Plans for Fiscal Year 2022, 2023, and 2024. See ECF No. 9-2. Defendant later submitted unredacted versions pursuant to a Protective Order. *See* ECF No. 23. As the Magistrate Judge noted, Plaintiff did not object to the authenticity of the attached Incentive Plans. *See* ECF No. 11. Accordingly, the Court will consider the attached Incentive Plans as they are central to Plaintiff's claims and neither party disputes their authenticity. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (While consideration of a Rule 12(b)(6) motion is generally limited to the four corners of the Complaint, the Court may consider documents if those documents are "central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

**A.    Colorado Wage Act Claim**

To bring a claim under CWCA, a plaintiff must allege that their wages or compensation were "earned, vested, and determinable" under the terms of his or her employment agreement. § 8-4-109(3)(b); *Lawson v. Heartland Payment Systems*, 548 F. Supp. 3d 1085, 1091 (D. Colo. Nov. 17, 2020). Wages or compensation include bonuses or commissions earned under an agreement between an employer and employee. § 8-4-101(14)(a)(II). Wages are earned when they are "received as return . . . for work done or services rendered." *Johnson v. Greenfield Holdings*, No. 22-cv-01909-REB-NRN, 2023 WL 3437372, *4 (D. Colo. May 12, 2023). Compensation is vested when "'it is not contingent,' but instead 'unconditional or absolute.' " *Id.* Finally, compensation is determinable when it is "capable of being determined, definitely ascertained, or decided upon." *Id.*

The Recommendation concluded that Plaintiff properly alleged his commissions were earned, vested, and determinable. In its objection, Defendant argues that "the Magistrate Judge ignored the critical terms and language in the operative incentive plans to reach the erroneous conclusion that Plaintiff had earned the commissions in question under the [CWCA]." ECF No. 26. Specifically, Defendant contends that under the clear terms of the incentive plans, Plaintiff's commissions are not earned, vested, and determinable until reconciliation and transfer. ECF No. 26 at 6. According to Defendant, because Plaintiff did not allege that these conditions precedent were met, Plaintiff's commissions do not constitute "wages" within the meaning of the CWCA.

To determine whether Plaintiff has properly alleged his commissions were earned, vested, and determinable, the Court looks to the terms of the employment agreements—

4

in this case, the Pre-2024 Incentive Plans. *See Gomez v. Children's Hosp. Colorado*, No. 18-CV-00002-MEH, 2018 WL 3303306, at *6 (D. Colo. July 8, 2018) ("Colorado courts have specifically held that employment agreements define when benefits are earned, vested, and determinable."); *see Coldwell v. RITE Corp Envtl. Prop. Sols.*, No. 16-CV-01998-NYW, 2018 WL 5043904, at *5 (D. Colo. Oct. 17, 2018) ("Courts have held that for wages to be 'earned' or 'vested' under CWCA, they must be earned under the applicable employee agreement."); *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo. App. 2003) ("For purposes of the CWCA, compensation is earned if it is vested pursuant to an employment agreement at the time of an employee's termination." (citations and quotation marks omitted)); *Barnes v. Van Schaack Mortgage*, 787 P.2d 207, 209 (Colo. App. 1990) (stating that the CWCA applies "only to compensation that has been earned under the employment agreement.").

Under the terms of the Pre-2024 Incentive Plans, "[i]ncentive on a contract is not actually earned until transfer and reconciliation. The Company reserves the right to deduct overpayments from future incentive payments." ECF No. 23, ¶¶ 7-8; Ex. A at 24; Ex. B at 28.  Thus, the Pre-2024 Incentive Plans provide that the commission is not treated as earned until the contracts are transferred, reconciled, and payment is collected. *Id.*

In *Lawson*, Chief Judge Brimmer dismissed the plaintiff's CWCA claim because she failed to allege that her bonuses were "earned and vested." 548 F. Supp. 3d. at 1092. In that case, the employment agreement explicitly stated that the bonus is not "earned" until: (1) an installation has occurred; (2) twelve months have passed since installation; and (3) the recipient of the bonus is still employed by the company. 548 F. Supp. 3d. at

5

1092. Chief Judge Brimmer concluded that because Plaintiff had not alleged that these conditions precedent had been met, her bonuses were not vested, earned, or determinable. *Id.* at 1092-94. Here, as in *Lawson*, Plaintiff has not alleged that the conditions precedent—reconciliation, transfer, and full payment—have occurred. Although Plaintiff alleges that Defendant announced its intent to continue to service the contracts that Plaintiff (and other employees) procured and accept payment on those contracts, there is no allegation that the contracts were fully transferred, reconciled or paid. Under the terms of the Pre-2024 Incentive Plans, if the contract was not fully transferred or reconciled, the advance on the commission could be "charged back," demonstrating that the commission is not absolute, and therefore not vested, before full transfer and reconciliation of those contracts. Accordingly, Plaintiff has not alleged that the accrued backlog of his commissions was "vested, earned, or determinable."

The Pre-2024 Incentive Plans also reserved Defendant "the right to change this incentive plan for this Plan Year and any subsequent Plan Year," and provides that "[m]anagement has the right to amend, modify, or terminate the plan at the company's discretion with or without notice to the participants, and without consultation." ECF No. 23, ¶¶ 7, 8, Ex. A at 24, 33; Ex. B at 28, 37. In line with this reservation of rights, Defendant implemented a new incentive plan in 2024. The 2024 Incentive Plan provides that 100% of commission is paid at the time of booking for all sales made on or after October 1, 2023, regardless of when Defendant collects full payment, and the contract is transferred. *Id.* Ex. C. Under the 2024 Incentive Plan, any commissions that were unearned at the expiration of the Pre-2024 Incentive Plans would remain unearned.

In the Recommendation, the Magistrate Judge reasoned that Colorado's public policy disfavoring contracts that cause employees to waive or modify their rights under the CWCA "wins the day for Plaintiff on the CWCA claim." *Id.* at 13 (citing C.R.S. § 8-4-121) (agreements waiving or modifying employee's rights in violation of the CWCA are void).  However, for the statute to be applicable, Plaintiff must have an enforceable right under CWCA. *See Hallmon v. Advance Auto Parts*, 921 F. Supp. 2d 1110, 1119 (D. Colo. 2013) (explaining that modifying or waiving an employee's right to wages that are already vested under the terms of the employment agreement violates the public policy behind the CWCA); *Nieto v. Clark's Market, Inc.*, 488 P.3d 1140, 1146 (Colo. 2021) (finding forfeiture provision void under the CWCA's where the vacation pay was earned and determinable). Because Plaintiff has not alleged that his commissions were vested under the terms of the Pre-2024 Incentive Plans, he has not alleged an enforceable right under CWCA. *See* § 8-4-109(3)(b) (providing an employer is liable "for the amount of the earned, vested, determinable, and unpaid wages."). Accordingly, Plaintiff's CWCA claim is dismissed without prejudice.

**B.    Breach of Contract**

Next, Defendant argues the Magistrate Judge erred in failing to dismiss Plaintiff's breach of contract claim. Under Colorado Law, a breach of contract claim requires: (1) existence of a contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages. *See Shell v. Am. Fam. Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). The Magistrate Judge found that Plaintiff sufficiently pleaded all four elements. Defendant's objection centers on the third element, arguing that because Plaintiff did not

7

allege that all conditions precedent for his entitlement to commission under the Pre-2024 Incentive Plans were met, Defendant was not obligated to pay the "backlogged" commissions.

Here, as explained above, the Pre-2024 Incentive Plans required reconciliation and full payment before Plaintiff is entitled to the backlogged commission. The Pre-2024 Incentive Plans also permit Defendant to change, modify, and terminate the plans without notice. Plaintiff does not allege the conditions precedent were satisfied while the Pre-2024 Incentive Plans were in place. *See Rosales v. AT & T Info. Sys., Inc.*, 702 F. Supp. 1489, 1503 (D. Colo. 1988) (Fed. R. Civ. P. 9(c) requires plaintiff to plead the performance of conditions precedent in order to allege a claim for breach of contract) (citing *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987)). Accordingly, Plaintiff has not sufficiently alleged a claim for breach of contract.

### C. Plaintiff's Third Cause of Action

Next, Defendant objects to the Magistrate Judge permitting the unjust enrichment claim to go forward as an alternative claim. Defendant argues that "[b]ecause Plaintiff's unjust enrichment claim covers the same subject matter as the breach of contract claim," the Court should dismiss the unjust enrichment claim.

Although Defendant is correct that an unjust enrichment claim may not proceed where it covers the same subject matter as the breach of contract claim, Plaintiff may still plead both theories in the alternative. *See Stone Creek Bus. Ctr. v. Stone Creek–Colo.*, No. 20-cv-01413-PAB-GPG, 2022 WL 4448822, *2 (D. Colo. Sept. 23, 2022) ("[A]lthough a plaintiff may *plead* claims for breach of contract and unjust enrichment in the alternative, a party may not *recover* for unjust enrichment by asserting a quasi-contract when an

8

express contract covers the same subject matter.") (internal quotation omitted); *see also United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1058 (D. Colo. 2020) (explaining a party may plead unjust enrichment as an alternative to a breach of contract claim); *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colo.*, No. 11-cv-03333-WYD-KLM, 2012 WL 2190852, *4 (D. Colo. June 14, 2012) (same). At this stage, Plaintiff may plead both a breach of contract claim and an unjust enrichment claim. For these reasons and the reasons set forth in the Recommendation, Defendant's objection is overruled.

### D.  Plaintiff's Fourth Cause of Action

Finally, Defendant argues the "Magistrate Judge erroneously concluded that Plaintiff's Complaint did not seek to alter the existing terms of the operative agreements between [Defendant] and Plaintiff and the breach of implied duty of good faith and fair dealing claim should not be allowed to proceed." ECF No. 26 at 13.

"Every contract in Colorado contains an implied duty of good faith and fair dealing." *New Design Constr., Inc. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1181 (Colo. App. 2008) (internal quotation marks omitted). A plaintiff may rely on the duty of good faith and fair dealing "when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* (internal quotation marks omitted). "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *City of Golden*, 138 P.3d at 292 (quoting in part *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). "Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with

the justified expectations of the other party.' " *Amoco Oil Co.*, 908 P.2d at 498 (quoting in part *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994)). The implied duty of good faith and fair dealing cannot, "[h]owever, ... contradict terms or conditions for which a party has bargained." *Amoco Oil Co.*, 908 P.2d at 498 (citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989).) "Nor does the duty . . . inject substantive terms into the parties' contract." *Id.* at 507 n.6 (internal quotation marks omitted). "Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." *Id.* (internal quotation marks omitted).

Here, Plaintiff alleges that the Pre-2024 Incentive Plans specifically contemplated the payment of his commissions—including his "backlog." As discussed above, the express terms of the Pre-2024 Incentive Plans entitle Plaintiff to payment on earned commissions upon reconciliation and full payment on the contracts. Plaintiff alleges Defendant breached the implied covenant of good faith and fair dealing by withholding his accrued backlog of approximately $156,673.12 in earned wages under the Pre-2024 Incentive Plans. ECF No. 4 ¶¶ 50-52. Defendant relies on the discretionary provision of the Pre-2024 Incentive Plans, which reserves Defendant the right to amend, modify, or terminate the Incentive Plan at the company's discretion with or without notice to the participants, as grounds for terminating commissions payments that "might or might not" become due under the Pre-2024 Incentive Plans. ECF No. 9 at 7; ECF No. 23, ¶¶ 7, 8, Ex. A at 24, 33; Ex. B at 28, 37.

Thus, Plaintiff's breach of implied duty claim does not inject new or substantive terms into the contract; rather, the claim asserts that Defendant exercised its discretion

10

under the Pre-2024 Incentive Plans in bad faith to deprive Plaintiff of the benefit of his earned "backlogged" commissions. *See ADT Sec. Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 295 (Colo. App. 2007) (to prevail on claim asserting breach of the implied covenant of good faith and fair dealing a plaintiff must establish that the defendant exercised the discretion granted to it under the contract and deprived plaintiff of the benefit of the contract as a result); *Amoco Oil Co*, 908 P.2d at 499 (finding an implied duty of good faith and fair dealing where the contract at issue expressly confers discretion to modify future terms). Accordingly, Plaintiff has stated a claim for breach of the implied covenant of good faith and fair dealing.

### III. CONCLUSION

The Court **ORDERS**:

1. Defendant's Objection to the Recommendation, ECF No. 26, is **SUSTAINED IN PART** and **OVERRULED IN PART**;

2. The Magistrate Judge's Recommendation, ECF No. 25, is **ACCEPTED AND ADOPTED IN PART** and **REJECTED IN PART**;

3. Defendant's Motion to Dismiss Plaintiff's Complaint, ECF 9, is **GRANTED IN PART** as to Plaintiff's first and second claims for relief and **DENIED IN PART** as to Plaintiff's third and fourth claims for relief;

4. Plaintiff's first and second claims for relief are **DISMISSED WITHOUT PREJUDICE**;

5. Plaintiff shall have twenty-one (21) days from the date of this Order to file a motion for leave to amend, together with a proposed amended complaint correcting the pleading deficiencies identified in the Recommendation.

DATED: March 27, 2025

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge